# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARTE HOLLIS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 15 C 7297 |
| ) | |
| NICHOLAS LAMB, Assistant Warden, ) | |
| Stateville Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After a bench trial in the Circuit Court of Cook County, Marte Hollis was convicted of the first-degree murder of Matthew Judkins and sentenced to forty-five years in prison. Hollis has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hollis claims that 1) the trial court denied him due process and a fair trial by refusing to admit evidence of Judkins' violent character; 2) the prosecution intentionally withheld evidence of Judkins' prior convictions in violation of *Brady v. Maryland*; and 3) trial counsel provided ineffective assistance in violation of the Sixth Amendment. Respondent argues that Hollis has failed to assert claims under federal law, that all his claims are procedurally defaulted, and that all his claims lack merit. For the reasons stated below, the Court denies Hollis's petition.

## Background

The following is a summary of the relevant facts and procedural history of this case, taken from the Illinois Appellate Court's decision in Hollis's appeal of his petition

for post-conviction relief. Additional facts relevant to Hollis's ineffective assistance claims are discussed later in this decision.

Hollis dated Chantelle Moore for many years before they broke up in October 2004. They had two children; Chantelle Moore also had a daughter named Chanell from a previous relationship. On February 17, 2005, Matthew Judkins visited Chantelle at her home. He sat in her bedroom while Chantelle took a shower in a non-adjoining bathroom. While she was showering, her son came in to tell her that Hollis was at the door. Chantelle told her son to tell Hollis that she was not home, but Chantelle's daughter, Chanell, let Hollis into the house. When Chantelle came out of the shower, she found Hollis in the hallway.

Hollis told Chantelle that he wanted to get some of his clothes and opened the bedroom door. When he saw Judkins, Hollis asked him what he was doing in Hollis's house. Judkins responded that it was not Hollis's house, and Chantelle returned to the bathroom to get dressed. While in the bathroom, Chantelle heard a gunshot. She came out of the bathroom and saw Hollis standing in the hallway. She watched him fire two shots at the closed bedroom door and then flee.

Chanell also observed Hollis open the bedroom door, talk to Judkins, and then pull out his gun. She testified that Judkins quickly closed the bedroom door, and Hollis tried to force the door open. Once Chanell heard the first gunshot, she ran out of the house and saw a van sitting in the driveway. She recognized the driver as Hollis's friend, Lamont Beard. She watched Hollis run out of the house and jump into the van.

Judkins died from multiple gunshot wounds. Two days later, the police interviewed Hollis at the police station and did not record the interview. Hollis also

agreed to give a videotaped statement, which was consistent with his interview.  Hollis admitted to shooting Judkins and said he had been afraid of Judkins, who was known to have committed robberies and shot at police.  At trial, Chantelle testified that she kept a gun in her bedroom closet but that it would not have been visible from the bedroom.  The police also discovered a knife on an ottoman near the chair where Judkins had been sitting.

At trial, Hollis presented a theory of self-defense.  Defense counsel moved to introduce testimony by Officer Rick Anthony of the South Holland Police Department in order to prove that Judkins had a violent character.  Officer Anthony was not involved with the investigation of Hollis, but he had interacted with Judkins on a prior occasion.  Defense counsel made an offer of proof that Officer Anthony would testify about an incident in which Judkins attempted to evade the police and was ultimately charged with armed violence and controlled substance offenses.  The trial court found that the evidence was not admissible under Illinois law.

Defense counsel also called Beard to testify at trial.  Beard testified that Hollis was not angry when they arrived at Chantelle's home, that he heard loud noises but did not know what they were, and that he did not see a gun when Hollis left the house.  This was inconsistent with his grand jury testimony, in which he said that he recognized the sounds as gunshots and saw Hollis run from the house with a gun.

Hollis was convicted of first degree murder and sentenced to forty-five years in prison.  He filed a direct appeal in which he argued that the trial court erred in denying the admission of Officer Anthony's testimony.  The appellate court rejected this argument and affirmed the conviction.  Hollis filed a petition for leave to appeal (PLA) to

3

the Illinois Supreme Court, which was also denied.

Hollis, represented by private counsel, then filed a post-conviction petition, alleging ineffective assistance of trial counsel. Specifically, Hollis alleged that trial counsel: (1) was ineffective in failing to locate additional witnesses to testify to Judkins' violent character; (2) should not have called Beard as a witness; (3) erred in stipulating to an inaccurate autopsy report that indicated Judkins died of "shotgun" wounds instead of "gunshot" wounds; (4) was ineffective in failing to file a motion to suppress Hollis's statements at the police station; and (5) was ineffective in failing to request discovery sanctions against the prosecution for the destruction of a relevant 911 tape. The prosecution filed a motion to dismiss this petition, which the state trial court granted.

Hollis then filed a notice of appeal to the Illinois Appellate Court and was appointed new counsel. Appointed counsel presented an entirely different argument on appeal—that original post-conviction counsel was ineffective—and did not argue ineffective assistance of trial counsel.

On April 2, 2014, before the prosecution had filed its response brief on the post-conviction appeal, Hollis filed a *pro se* motion asking the appellate court to terminate his appointed counsel and grant him leave to file a *pro se* brief. Hollis explained that he disagreed with appointed counsel's decision not to argue on appeal the constitutional claims he had asserted in his original post-conviction petition. Specifically, Hollis expressed his concern that due to counsel's failure to raise these claims, he might forfeit his ability to raise them in a later habeas petition. On April 16, the appellate court summarily denied Hollis' motions.

On April 23, 2014, Hollis filed a *pro se* motion for reconsideration of the April 16

order; the appellate court denied this motion. On May 16, Hollis filed a *pro se* reply to the state's response brief, which the appellate court interpreted as a motion for leave to file a *pro se* supplemental reply brief. On June 12, 2014, the appellate court denied this motion. On March 16, 2015, Hollis filed a PLA with the Illinois Supreme Court, again asserting the merits of his original constitutional claims and alleging errors by the appellate court. On May 27, 2015, the Illinois Supreme Court denied his petition.

Hollis then filed the present petition for a writ of habeas corpus. He asserts the following claims:

> 1) the trial court denied him due process by refusing to admit Officer Anthony's testimony;
>
> 2) the prosecution denied him due process by intentionally withholding material in violation of *Brady v. Maryland*;
>
> 3) trial counsel was ineffective for failing to investigate witnesses to testify regarding Judkins's violent character;
>
> 4) trial counsel was ineffective for calling Beard to testify;
>
> 5) trial counsel was ineffective for stipulating to an inaccurate autopsy report;
>
> 6) trial counsel was ineffective for failing to move to suppress Hollis's statements; and
>
> 7) trial counsel was ineffective for failing to request discovery sanctions against the prosecution for its destruction of a 911 tape.

## Discussion

### I. Exclusion of Officer Anthony's testimony

Hollis claims that the trial court erred in ruling inadmissible the testimony of Officer Anthony. Respondent argues that Hollis does not present a cognizable habeas claim under federal law because he bases his argument on the trial court's alleged misapplication of state law. Respondent also argues, in the alternative, that any such

5

habeas claim is procedurally defaulted.

To bring a petition under 28 U.S.C. § 2254, a defendant must assert that his custody is in violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court reviewing a habeas corpus petition is therefore limited to considering violations of a petitioner's federal rights. *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). A habeas petitioner must do more than ask the court "to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Accordingly, a state trial court's evidentiary rulings are typically beyond the scope of habeas corpus review. *Perruquet*, 390 F.3d at 511. Such errors may, however, constitute violations of a defendant's due process right to a fair trial. *Id*. Respondent contends that Hollis has presented his claim solely as involving a violation of state-law rules and not as a potential denial of due process.

This Court finds that Hollis has drawn a sufficient connection between his right to due process and the trial court's alleged error. Just as in *Perruquet*, Hollis did more in his petition than merely cite his constitutional right. *See id*. at 512. Hollis articulated his theory of self-defense, described how the excluded evidence—Officer Anthony's testimony—supported his theory, and argued that the state court ruling prevented him from adequately pursuing the theory of self-defense. Hollis has therefore raised a cognizable habeas claim based on a federal right.

This Court also finds, however, that this claim has been procedurally defaulted. A habeas corpus petitioner is required to first exhaust all available remedies in state court. 28 U.S.C. § 2254 (b)(1)(A). This requires that the petitioner "fairly present" his claim to the state courts and give those courts the first opportunity to rule on the merits.

6

*Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).  A habeas corpus petitioner "need not cite book and verse on the federal constitution," but he must "alert the state courts to the federal underpinnings of his claim."  *Perruquet*, 390 F.3d at 519 (internal quotation marks omitted).  A petitioner who fails to do so has procedurally defaulted his claim.  *Lewis*, 390 F.3d at 1026.

The Seventh Circuit considers the following factors in determining whether a claim was fairly presented to the state courts: (1) whether the petitioner relied on federal cases using a constitutional analysis; (2) whether the petitioner relied on state cases using a federal constitutional analysis; (3) whether the petitioner framed the claim so as to call to mind a federal constitutional right; and (4) whether the petitioner alleged facts within the mainstream of federal constitutional litigation.  *Perruquet*, 390 F.3d at 519–20.  Under this analysis, Hollis failed to fairly present his due process claim to the state courts.  Hollis raised the trial court's error in his direct appeal, but he failed to mention either the Fourteenth Amendment or due process.  Hollis's essential argument was that the trial court misapplied *People v. Lynch*, 104 Ill. 2d 194, 470 N.E.2d 1018 (1984).  In making this argument, Hollis did not cite any federal cases, and the state cases that he cited analyzed only Illinois law.  Hollis presented the state courts with ordinary questions of state law and therefore did not alert those courts to the existence of a federal constitutional issue.  *See Perruquet, 390 F.3d* at 520.  Hollis's due process claim is procedurally defaulted.

II.     **Non-disclosure of Judkins' criminal history**

Hollis appears to claim that the prosecution denied him due process by telling him only that Judkins was *charged* with armed violence and intentionally withholding

7

evidence that Judkins was convicted. Even if this were true, Hollis raises this claim for the first time in his reply brief before this Court. As outlined above, this constitutes procedural default because Hollis never presented this claim to the state court. But a habeas petitioner can excuse a procedural default if he can show "cause for the default and prejudice resulting therefrom." *Id.* at 514. To show cause, a petitioner must show that "some external impediment blocked him from asserting his federal claim in state court." *Id.* at 514–15. Prejudice requires a showing that the alleged error worked to the petitioner's actual and substantial disadvantage. *See id.* at 515.

Hollis asserts that he did not discover the prosecution's non-disclosure until after he filed his habeas corpus petition in federal court. Pet'r's Mot. to Deny and Quash Resp't's Ans. at 11. While this might provide cause for a procedural default, the record does not support Hollis's allegation. It appears that Hollis was aware during his trial of Judkins' criminal history. The Illinois Appellate Court, when considering Hollis's direct appeal, indicated that Hollis had sought to introduce evidence that Judkins "was charged with armed violence and various controlled substance offenses and was convicted upon his guilty plea of possession of a controlled substance with intent to deliver." Resp'ts Resp., Exh. A at 5. This belies any claim that the prosecution withheld evidence of the charges against Judkins. To the extent that Hollis is now alleging that he was aware of the charge but was not told that Judkins was convicted of armed violence, this is also unsupported by the record. There is no evidence to suggest that Judkins was convicted of anything other than drug possession; the statements made by the parties at trial and the appellate court do not suggest otherwise. The criminal history report submitted by Hollis in conjunction with this appeal does not delineate

8

which charges resulted in convictions. Pet'r's Mot. to Dismiss Exhs., Exh. 6. In short, Hollis has not shown that the prosecution concealed information from him during the trial. Thus there is no cause to excuse his procedural default of this claim.

## III. Ineffective assistance of counsel

Hollis alleges that five errors by trial counsel constitute ineffective assistance of counsel in violation of the Sixth Amendment. This Court finds that these claims were not procedurally defaulted but denies the claims on their merits.

### A. Procedural default

Respondent argues that Hollis's claims of ineffective assistance of trial counsel have been procedurally defaulted and should not be considered on their merits. Hollis asserted each of these claims in his initial petition for post-conviction relief but did not assert them on appeal before the Illinois Appellate Court. Respondent argues that this constitutes procedural default.

Hollis did everything he could to assert his ineffective assistance claims before the Illinois Appellate Court and the Illinois Supreme Court. When Hollis's appointed counsel declined to argue these claims, Hollis moved to discharge his appointed counsel and file a *pro se* brief in order to assert the claims himself. He filed multiple supplemental *pro se* briefs and motions for reconsideration in an effort to prevent the claims from being procedurally defaulted, and the Illinois Appellate Court repeatedly rejected these efforts. The exhaustion provision under 28 U.S.C. § 2254 requires "only that state prisoners give state courts a fair opportunity to act on their claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). The Illinois Appellate Court had multiple opportunities to address the merits of Hollis's claims and chose not to do so.

9

Respondent argues that the state courts rejected Hollis's briefs on state law grounds and therefore federal review is barred. When a state court resolves a claim by relying on an "independent and adequate state ground," federal review is foreclosed. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). In order for a state procedural rule to be an adequate state ground, state courts must apply it in a "consistent and principled way," and the rule must rest upon "firmly established and regularly followed state practice." *Page v. Frank*, 343 F.3d 901, 908–09 (7th Cir. 2003). In order for the same rule to be an independent state ground, the court must have "actually relied on the procedural bar" in resolving the petitioner's claims. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

The Illinois Appellate Court did not identify its basis for denying Hollis's motions to discharge his counsel and file *pro se* briefs. This alone may defeat respondent's claim of procedural default, as a state court must provide a "plain statement that its decision rests on state grounds." *Richardson*, 745 F.3d at 269 (internal quotations omitted). It is therefore questionable whether this is an "independent" state ground barring federal review.

That aside, respondent contends that in denying Hollis's motions, the state appellate court relied on an Illinois rule against hybrid representation, which prevents a party from simultaneously acting as his own attorney and acting through counsel. This rule, however, is not adequate as a procedural bar precluding federal review of the merits of Hollis's claims. Illinois courts often decline to follow this rule in capital cases. *See, e.g.*, *People v. McNeal*, 194 Ill. 2d 135, 147, 742 N.E.2d 269, 275–76 (2000). Further, Illinois courts in non-capital cases have frequently considered briefs filed both

*pro se* and by counsel. *See People v. Barnwell*, 285 Ill. App. 3d 981, 988, 675 N.E.2d 148, 153 (1996); *People v. Lewis*, 243 Ill. App. 3d 618, 629, 611 N.E.2d 1334, 1342 (1993); *People v. Boclair*, 225 Ill. App. 3d 331, 333, 587 N.E.2d 1221, 1222 (1992). The Court concludes that the state court's rejection of Hollis's *pro se* filings is not an adequate and independent state-law ground that bars federal review of his claims. *See Hitchcock v. Sec'y, Dept. of Corrections*, 360 F. App'x 82, 84–86 (11th Cir. 2010); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997); *cf. Kizer v. Uchtman*, 165 F. App'x 465, 467–68 (7th Cir. 2006).

### B. Merits

Claims of ineffective assistance of counsel are governed by the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 669 (1984). A court must assess "(1) whether counsel's performance fell below an objective standard of reasonableness and (2) whether counsel's errors prejudiced the defendant . . . ." *Blackmon v. Williams*, 823 F.3d 1088, 1102 (7th Cir. 2016) (internal citations and quotation marks omitted). The latter element requires the defendant to show a reasonable probability that "but for those errors, the result of the proceeding would have been different." *Id*. A federal court may grant a writ of habeas corpus only where the state court denial of such claims was "so erroneous as to be objectively unreasonable." *See McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015).

#### 1. Investigating other character witnesses

Hollis claims that trial counsel was ineffective for failing to investigate and present additional witnesses who would testify regarding Judkins' violent character. In his petition for post-conviction relief, Hollis included the statements of two witnesses,

who indicated that they were familiar with Judkins' reputation for violence. One of the witnesses stated that she would have testified regarding this reputation if counsel had called her to testify. Resp't's Resp., Exh. Y at 74.

Courts have found the performance of trial counsel to be objectively unreasonable where counsel has failed to investigate possible witnesses for the defendant. *See, e.g.*, *Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006). The Seventh Circuit has indicated that it evaluates counsel's conduct "from the perspective at the time the decision was made to forgo the investigation." *Id.* Hollis has not made any showing, however, that his trial counsel was aware of either of these witnesses. He has not offered any evidence that he identified these witnesses with counsel or that he asked counsel to find additional character witnesses or that the witnesses otherwise came to counsel's attention. Therefore Hollis has not shown that his counsel's failure to seek them out was objectively unreasonable.

Further, Hollis has not shown a reasonable probability that the case would have come out differently with their testimony. Although the witnesses were aware of Judkins' allegedly violent character, they did not witness the events of February 17 and could not provide first-hand accounts of Judkins' violence. At trial, there were at least two eyewitnesses who witnessed Hollis shoot Judkins. And the prosecution had Hollis's own statement, in which Hollis indicated that he shot Judkins before they started wrestling. In light of the significant evidence that contradicted Hollis's claim of self-defense, Hollis has not shown that he was prejudiced by counsel's alleged failure to put on these additional witnesses.

### 2. Calling Beard as a witness

Hollis contends that his trial counsel should not have called Beard as a witness. He states that Beard's testimony failed to add useful information to the defense and that counsel instead should have elicited testimony regarding Judkins' violent character. Further, Hollis states that Beard's testimony on cross-examination damaged Hollis's case, because Beard testified that Hollis did not mention that Judkins had attacked him first. But Hollis has failed to provide any evidence that Beard had particular knowledge of Judkins' character. Further, Hollis cannot viably claim that it was unreasonable to fail to elicit favorable testimony from Beard and also that counsel should not have put him on the stand because he hurt the defense case. Had counsel put Beard on and elicited testimony about Judkins' character, the prosecution likely would have elicited on cross-examination the same statements about which Hollis now complains. In any event, any detriment Hollis suffered as a result of Beard's testimony was insignificant; Hollis has therefore failed to show the prejudice required under *Strickland*.

### 3. Stipulating to the autopsy report

Hollis next alleges that trial counsel was ineffective because she stipulated to testimony that gave Judkins' cause of death as "shotgun" wounds instead of "gunshot" wounds. Hollis has failed to show that he was prejudiced by this error under the second element of the *Strickland* test. The trial transcript shows that the testimony twice used the word "gunshot" in similar phrases before using "shotgun." Resp't's Resp., Exh. Z at 218. The actual report admitted into evidence lists the cause of death as "gunshot wounds." Resp't's Resp., Exh. Y at 93. Hollis has not shown that this single misstatement would have been sufficient to change the outcome of the proceedings.

13

### 4. Failure to suppress Hollis's statements

Hollis claims that trial counsel further erred by failing to move to suppress his videotaped confession under 725 ILCS 5/103-2.1. This statute provides that custodial statements made at the police station are "presumed inadmissible" unless they are recorded. 725 ILCS 5/103-2.1(b). It also indicates that recorded statements made before or after statements that were not recorded are similarly "presumed inadmissible." 725 ILCS 5/103-2.1(d). The police recorded some—but not all—of Hollis's statements at the station.

As properly noted by respondent, however, the Illinois statute did not go into effect until July 2005 and therefore does not apply to statements made before that date. *See People v. Amigon*, 239 Ill. 2d 71, 85–86, 940 N.E.2d 63, 72 (2010). This is true even when statements taken before the statute's effective date are used at a trial that takes place after that date. *See id.* Hollis made his statements in February 2005, before the statute went into effect. Hollis cannot show that his counsel's failure to make a motion under this statute was objectively unreasonable. *See Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014) ("The Sixth Amendment does not require counsel to press meritless arguments before a court.").

### 5. Failure to request discovery sanctions

Finally, Hollis alleges that trial counsel was constitutionally ineffective for failing to request sanctions against the prosecution for destruction of evidence. Hollis repeatedly requested a copy of the recording of the 911 call made by Chantelle's son; the prosecution eventually revealed that it had been destroyed. Hollis has not provided this Court with any reason to believe that the destruction of the tape was anything more

14

than negligent, let alone that the prosecution acted deliberately or recklessly. Therefore there is no basis to find that his trial counsel fell below an objective standard of reasonableness in not moving for sanctions.

Hollis alleges that, had counsel moved for sanctions, the trial court might have barred any testimony relating to matters that were included on the 911 tape. Hollis surmises this could have resulted in the exclusion of any testimony about observations of Hollis on the night in question, any statements he made following his arrest, and the testimony of police officers and witnesses. Hollis does not cite to any rule for this proposition, nor can the Court think of one. Thus Hollis has also failed to show that, but for the failure to move for sanctions, the outcome of his trial would have been different.

## Conclusion

Hollis has procedurally defaulted his due process claims, both as to the exclusion of Officer Anthony's testimony and the alleged *Brady* violation. Though Hollis's ineffective assistance claims were not procedurally defaulted, he has failed to show that any error can meet the standard under *Strickland*. For the foregoing reasons, the Court directs the Clerk to enter judgment denying Hollis's petition for a writ of habeas corpus. The Court also declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2), because the correctness of the court's procedural default rulings against Hollis are not debatable, *see Slack v. McDaniel*, 529 U.S. 473, 478 (2000), and, on the claims the Court denied on the merits, there is nothing to suggest that the merits are debatable, capable of different resolution, or deserving of further consideration. See *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *Porter v. Gramley*, 121 F.3d 1308,

1312 (7th Cir. 1997).

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  October 25, 2016